UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ X

James H. Brady,

                       *Plaintiff,*

        v.

Eric Schneiderman, Attorney General
for the State of New York,

                     *Defendant.*

_____ X

**COMPLAINT AND AFFIDAVIT IN
SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR A
MANDATORY INJUNCTION**

State of New York   )
                 ) ss.
County of New York )

**15 CV 9141**

James H. Brady, being duly sworn, hereby deposes and says:

1.     This is a Complaint and Affidavit in support of equitable relief in the form of an

emergency motion for a Mandatory Injunction enjoining the New York State Attorney General, Eric

Schneiderman, to perform his duty and uphold the New York Constitution and investigate why on July

15, 2014, I was sanctioned to pay almost $400,000 in attorneys' fees by a New York State Justice,

Shirley Werner Kornreich, for exercising my constitutional right to sue the parties that participated in

the unlawful seizure and sale of $100,000,000 worth of development rights that the parties to the

contract agreed were part of my 12th Floor and Roof Unit in a commercial co-op.

2.     Mr. Schneiderman must also be compelled through a Mandatory Injunction to ask the

state Justices why they rewrote and permitted other Justices to rewrite the contract description of my

commercial apartment to void the rights expressly and exclusively given to my commercial apartment.

3.     In his official biography, Mr. Schneiderman states the following promise: "As the

highest ranking law enforcement officer for the State, Eric has taken on the tough fights to protect New

Yorkers – because he believes there has to be one set of rules for everyone, no matter how rich or

1

powerful."[1] Mr. Schneiderman must be forced through a Mandatory Injunction to keep that promise.

4.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution states that "no state shall deny to any person within its jurisdiction the equal protection of the laws" (U.S. Const. am. 14, §1). Equal protection guarantees under the United States and the New York Constitutions are substantially equivalent, and thus the same legal analysis for constitutionality is employed. *Matter of Care & Maintenance of KC*, 420 NW 2d 37 (1988).

5.     For years now, Mr. Schneiderman has failed to enforce my Constitutionally-mandated equal protection of the law by 1) repeatedly discarded my request that he ask the Justices by what line of reasoning or legal authority the justices of New York felt entitled to repeatedly rewrite the unambiguous offering plan contract to my commercial co-op apartment in order to void $100,000,000 worth of air rights that were exclusively reserved for the utilization of my 12th Floor and Roof Unit; and 2) allowing and going along with the imposition of sanctions and attorneys' fees in violation of 22 N.Y.C.R.R. § 130-1.1. Even worse, when confronted with this violation of the Equal Protection Clause, the Attorney General became an adversary and assumed the same fictitious arguments as the court.

6.     Attached as "Exhibit A" is a copy of my Complaint against the Attorney General's Office in the Court of Claims. The causes of action included: deprivation of property rights under color of law; uncompensated taking; violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; violations of 42 U.S.C. §1983(1) & (2) and 18 U.S.C. §241; and for common law negligent infliction of emotional distress; gross negligence; and *prima facie* tort. As of this date, no decision has been reached by the Court of Claims.

7.     The Attorney General's motion to dismiss is evidence of extraordinary circumstances. (Exhibit B). It shows Mr. Schneiderman adopting the same false claims from the decisions rather than

---

1   http://www.ag.ny.gov/about-attorney-general

admitting that the state's judicial employees repeatedly rewrote Plaintiff's contract description of his apartment in order to void Plaintiff's rights. Plaintiff requested the Court of Claims sign a subpoena so the sponsor of the co-op, Arthur Greene, could testify before the court. The Court of Claims refused to sign the subpoena.

8.     Without this Court's order granting a Mandatory Injunction, the Attorney General will continue to discard his duty to protect me, though he knows justices repeatedly and unlawfully rewrote the description of my commercial apartment to void its rights. His deliberate indifference led to an escalation in the corruption.

9.     I am now in immediate danger of irreversible, irreparable harm. I do not have the $400,000 to pay in these completely unjust sanctions, and a Sheriff's Levy with intent to seize has now been placed on my 12th Floor and Roof Unit at 450 West 31st Street by Herrick Feinstein LLP, attorneys for Sherwood Equities. (Exhibit C).

10.     The underlying cases are: *James Brady v. Jeffrey Katz, et al.,* (Index No. 654226/2013); *James Brady v. 450 West 31st Street Owner's Corp., et al.* (Index No. 157779/2013).

11.     The Seventh Paragraph Footnote to the Schedule of Units of the Amended Offering Plan, which reads as follows:

> "[Seventh Paragraph – New] The 12th floor and roof unit shall have, in addition to the utilization of the roof, the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law."

12.     Notwithstanding the absence of any legal authority or rationale, Justice Friedman on July 2, 2008 issued the first Supreme Court decision rewriting my contract:

> "the court finds that paragraph 7 is not ambiguous, and that it gives plaintiffs the right to build structures on or above the roof but does not convey air rights to plaintiffs."

13.     The parties to the contract perfectly understood what the contract means. In the first

3

round of litigation, Stanley Kaufman, the co-op's litigation attorney, stated in "Defendant's Reply

Memorandum of Law," April 14, 2008, p.5:

> **The clear intent** was to grant the 12th floor unit owner some latitude in adding **additional**
> **space, or structures**, so long as in doing so, the owner did not violate the local building code,
> **zoning regulations, or other ordinances**.

14.     And further:

> The clear and logical meaning of the added footnote number 7 of the Second Amendment was
> to grant 12[th] floor owner some latitude *in adding additional structures*, so long as in doing
> so, the owner did not endanger anyone else's health or safety or violate the building Code,
> *zoning laws or any other laws or ordinances*." (*Ibid.* p. 28).

15.     And further, Franklin Snitow, Extell's litigation counsel, stated in his "Affirmation for

Defendants Extell Dev. Corp.", et al., March 18, 2008, p. 2 ¶ 3:

> The intent is evidenced in the decision of the original owner of the 12th floor unit to build an
> 1,800 square foot penthouse on the roof.  Thus, the intent of the Amendment is clear on its
> face." (R: 310).

16.     On March 13, 2009, Justice Friedman put all her judicial powers into an ORDERED,

ADJUDGED and DECLARATION that again rewrote the contract by surrounding it with judicially-

constructed limitations:

> "pursuant to paragraph 7, plaintiffs, have, in addition to the utilization of the roof, the right to
> construct or extend structures upon the roof or above the same to the extent that may from time
> to time be given under applicable law. *Provided that*: Nothing herein shall be construed as
> holding that plaintiffs have the right to use all or any part of the TDRs in connection with such
> construction or extension."

17.     Plaintiff appealed these decision because they were blatantly contradictory.  On

February 11, 2010, the Appellate Division, First Department issued a decision that was internally

inconsistent and made absolutely no sense.  (Exhibit D).  On the one hand, the decision included the

following words:

> "that plaintiffs have the right to construct or extend structures upon the roof or above the same

4

to the extent that may from time to time be permitted under applicable law, unanimously affirmed, without costs."

18.    On the other hand, the decision contradicted itself by including *dicta* after dismissing the July 2, 2008 decision as moot:

It reserves for plaintiffs the right, as [*2]permitted by the relevant laws, to construct or extend structures on the roof that may be built without the use of the building's development rights.

19.    Plaintiff sought clarification of this decision from the Appellate Division but was rebuked.

20.    Following the second-round of litigation after Sherwood Equities purchased the premise's development rights after asking for but failing to obtain a Waiver from Plaintiff, Justice Kornreich issued a July 15, 2014 decision in which she rewrote both the original contract and the Appellate Division's decision:

"It has already been adjudged that while the owners of the unit **may** have the right to erect additional structures on the roof, that right does not entitle them to use any floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at *2 & *4-*5."

21.    Mr. Schneiderman was given the transcript of the March 18, 2014 Oral Arguments (Exhibit E), and the July 15, 2014 decision. (Exhibit F).  These documents prove clear corruption on the part of Justice Kornreich, and yet Mr. Schneiderman, the Court of Appeals, and the Commission on Judicial Conduct have refused to take any action when confronted with the following blatant contradictions.

22.    At the March 18, 2014 Oral Arguments, Justice Kornreich made the following admissions:

THE COURT:  How would you deal with the decision of the Court and say he has no development rights, he has no air rights, yet he has the right to build? What does that mean? (Transcript p. 9:17-20).

5

THE COURT: The courts said that he has no air rights, but he has the right. But I think, perhaps, the courts didn't understand that air rights, FAR, all of that is probably the same things, development rights, so – (Transcript p.12:9-13).

THE COURT: I don't know what you said. Nor do I know what the Court said. (Transcript p. 14:12-13)

THE COURT: But I'm asking you because I have to in this action decide what the contract means, and I'd like your – you to weigh in on that. (Transcript p. 15:25-p. 16:2).

THE COURT: The decisions don't – don't address this, because, at least in this Court's mind, I don't see how you can build and build up without going into air rights or – you know, so I don't understand the decisions. I'm asking you for guidance. (Transcript p. 17:18-22).

**THE COURT: And the Appellate Division and lower court doesn't say, "You can only build to a certain height," they said "Yeah, he has the right to build up and out but he can't use the air rights," which is really an enigma. (Transcript, p. 27:3-29:3).**

**THE COURT: I don't understand how you can build a structure on a roof if you have no air rights**. (Transcript p. 28:4-5).

Mr. BRADY: So the correct reading it's an inconsistent decision. Please square the two, Your Honor. Square –

THE COURT: I don't know how. (Transcript p. 53:17-19).

THE COURT:  – it was the sponsor who put this in, it was the sponsor who owned the penthouse and roof. Perhaps that was his intent. However, I can't rule that way because the Supreme Court already ruled and the Appellate Division already ruled that you do not own those air rights. (Tr. p. 54:11-20).

23.     In the July 15, 2014 decision, the Court further made the following admissions:

"Strictly speaking, Brady is correct that the question of whether such an easement interferes with his right to build structures on the roof or otherwise permitted by applicable law has never been determined and so is not barred." (July 15, 2014 decision, p.15).

"Brady correctly notes that the issue of whether the sale to Extell violated his rights was never reached, and that the issue of whether the sale of the air rights by 450 Owners Corp. to Sherwood violated Brady's rights could not have been reached in the prior actions." (July 15, 2014 decision, p.19).

24.     Yet notwithstanding all of those admissions, in the July 15, 2014 decision, Justice

Kornreich completely departed from all of her admissions and from her clear understanding of the case,

6

and instead stated that Plaintiff's claims were frivolous and meritless, and imposed $400,000 of

sanctions:

> "It is clear from the papers and the transaction's history that Brady acted in bad faith in bringing the instant cases."

> "His misinterpretation of prior judgment, his feigned ignorance or the origin or the meaning of the phrase "transferable development rights," and his argument that a decision, which he appealed to no avail, is not binding are but a few examples of the frivolous arguments made in the instant actions."

> "In short, Brady has dragged more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance."

> "The trial court and the appellate court courts in the Prior Action have denied him such control. Undeterred, he has ignored these courts' rulings and brought these meritless actions, abusing the judicial process."

> "This is a near perfect example of frivolous conduct that warrants defendants request for the imposition of sanctions."

25.     For the sake of the public interest, the Mandatory Injunction should be granted.  The

public will certainly benefit from the Justices needing to explain why they are rewriting and permitting

other Justices to rewrite unambiguous descriptions of apartments to void the rights of contracts for the

benefit of powerful New York developers.  The public needs to know why New York State Justices are

imposing sanctions on people who seek to vindicate the rights that they purchased.

26.     Mr. Schneiderman acknowledges his duty is to protect those very rights and to protect

the interests of consumers.

> "At some point, we're going to have to make some adjustments to the system.  It's up to us, as the top law-enforcement agency in the state, that consumers get what they pay for."  Eric Schneiderman[2]

27.     Mr. Schneiderman acknowledges that part of his job is to ensure consumers "get what

they pay for."  Plaintiff paid for a right, as Justice Kornreich stated at Oral Arguments: "The contract is

---

2    http://nypost.com/2015/11/02/schneidermans-fantasy-sports-probe-focused-on-nonpublic-information/

the contract. It wasn't changed when he bought it. *He bought that right*." (Full Citation *Infra*).

28.     Plaintiff is not only not getting what he paid for, but he is being sanctioned and having his property levied for attempting to enforce his contractual rights. Plaintiff has no other options but to seek injunctive relief from the District Court given the extraordinary circumstances of this case.

29.     A Mandatory Injunction will ensure that the consumers get what they pay for when they purchase apartments. The public has a right to protection from the Attorney General's Office when it is proven that certain Justices are rewriting contracts to void the rights that consumers paid millions of dollars for. As this is an extraordinary circumstance that Mr. Schneiderman is failing in this fundamental duty, a Mandatory Injunction is needed.

## PARTIES

30.     Plaintiff James H. Brady is the owner of the 19 shares of capital stock of 450 West Owners Corp. designated for the 12th Floor and Roof Unit located at 450 West 31st Street, New York, NY 10001.

31.     Defendant Eric Schneiderman is the New York State Attorney General, located at Office of the Attorney General, The Capitol, Albany, NY 12224-0341.

## JURISDICTION AND VENUE

32.     The Court has jurisdiction over this action pursuant to the federal question arising out of the Fourteenth Amendment's Equal Protection Clause and under 28 U.S.C. §1983 as a civil action for deprivation of rights. The federal court has jurisdiction over civil rights complaints pursuant to 28 U.S.C. §1343 (a)(3). As a *pro se* petitioner, I ask the court to construe this pleading liberally when establishing whether it has met the federal requirement of the well-pleaded rule. *Hall v. Bellmon*, 935 F.2d. 1106 (1991).

33.     This court has supplemental jurisdiction over any claims that may be raised based on state law under 28 U.S.C. §1367, which provides in pertinent part that "in any civil action of which the

8

district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," subject to the "common nucleus of operative facts" established in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

34.     Venue is proper in this district based to the location of the events herein alleged and the location of the plaintiff and defendants pursuant to 28 U.S.C. § 1391(b).

35.     Under these extraordinary circumstances, the Venue is certainly proper since the New York State Court Justices are in collusion to seize Plaintiff's rights, and are disregarding their duty to enforce the Offering Plan contract as written.  Venue is proper because are definitely in collusion to violate Plaintiff's constitutional rights, and have done nothing to protect Plaintiff from the sanctions which they know are unconstitutional and unwarranted in this case.

I.     **MOVANT MEETS THE CRITERIA FOR AN AFFIRMATIVE OR MANDATORY INJUNCTION**

36.     A party seeking injunctive relief ordinarily must show:  (a) a substantial likelihood of success on the merits; (b) the plaintiff will suffer irreparable injury if the injunction is not granted; (c) a balance of the equities tips decidedly in the movant's favor; and (d) the public interest will be served by the injunction.  See, e.g., *Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 77–78 (2d Cir.1994); *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (1979) (per curiam); *P&G v. Stoneham*, 747 N.E. 2d 268 (2000).

37.     A mandatory injunction is an injunction which orders a party or requires them to do an affirmative act or mandates a specified course of conduct.  It is an extraordinary remedial process which is granted not as a matter of right, but in the exercise of sound judicial discretion. *Morrison v. Work*, 266 U.S. 481 (1925).

38.     Mandatory or affirmative injunctions alter the status quo "by commanding some positive act." *Tom Doherty Associates, Inc. v Saban Entm't, Inc.*, 60 F.3d 27, 34 (2nd Cir. 1995). The United States Supreme Court has distinguished between mandatory and prohibitory injunctions by describing a mandatory injunction as one that orders a party to "take action," whereas a prohibitory injunction would "restrain" a party from unlawful action. *Meghrig v. KFC W, Inc.*, 516 U.S. 479, 484 (1996). When the relief requested constitutes a mandatory injunction, "the burden placed on he moving party is increased." *Mercedes-Benz US v. Cobasys, LLC*, 605 F.Supp. 2D 1189, 1196 (N.D. Ala. 2009).

39.     In the present case, the status quo that needs to be changed is the inaction of the Attorney General of New York, who has failed to perform his constitutionally-mandated duty to investigate the rewriting of an unambiguous real estate contract, and the imposition of sanctions following Movant's attempt to have his rights vindicated in court.

**a)**     **That there is a substantial likelihood of success on the merits of the case**

**(i) The Imposition of Sanctions and Award of Attorneys' Fees Violates the "American Rule" and New York Law**

40.     The State of New York follows the "American Rule" in whether to award attorneys' fees. "An award of attorneys' fees as a direct remedy must be based on contract or statute." City of New York v. Zuckerman, 234 A.D.2d 160, 651 N.Y.S.2d 473, 474 (1st Dept. 1996). "In the absence of any pertinent contractual authority or statutory provision with respect to the recovery of amounts expended in the successful prosecution or defense of an action, each party is responsible for its own legal fees." Chapel v. Mitchell, 642 N.E.2d 1082, 84 N.Y.2d 345, 618 N.Y.S.2d 626 (1994); Hunt v. Sharp, 85 N.Y.2d 883, 649 N.E.2d 1201, 626 N.Y.S.2d 57 (1995).

41.     New York law is clear that a court has discretion to award attorneys' fees and issue sanctions only in cases of frivolous conduct.

(a) The court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct as defined in this Part.  22 N.Y.C.R.R. §130-1.1

42.    Under 22 N.Y.C.R.R. § 130-1.1, "conduct is frivolous if:"

(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;
(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
(3) it asserts material factual statements that are false.

In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the (1) circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct; (2) whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party.

43.    It is clear and obvious given the Courts' numerous admissions regarding the merits of

my claims that sanctions are not remotely warranted in this case.

THE COURT:  How would you deal with the decision of the Court and say he has no development rights, he has no air rights, yet he has the right to build? What does that mean? (Transcript p. 9:17-20).

THE COURT: The courts said that he has no air rights, but he has the right. But I think, perhaps, the courts didn't understand that air rights, FAR, all of that is probably the same
things, development rights, so – (Transcript p.12:9-13).

THE COURT: I don't know what you said. Nor do I know what the Court said. (Transcript p. 14:12-13)

THE COURT: But I'm asking you because I have to in this action decide what the contract means, and I'd like your – you to weigh in on that. (Transcript p. 15:25-p. 16:2).

THE COURT: The decisions don't – don't address this, because, at least in this Court's mind, I don't see how you can build and build up without going into air rights or – you know, so I don't understand the decisions. I'm asking you for guidance. (Transcript p. 17:18-22).

THE COURT: And the Appellate Division and lower court doesn't say, "You can only build to a certain height," they said "Yeah, he has the right to build up and out but he

can't use the air rights," which is really an enigma. (Transcript, p. 27:3-29:3).

THE COURT: I don't understand how you can build a structure on a roof if you have no air rights. (Transcript p. 28:4-5).

Mr. BRADY: So the correct reading it's an inconsistent decision. Please square the two, Your Honor. Square –

THE COURT: I don't know how. (Transcript p. 53:17-19).

THE COURT:  – it was the sponsor who put this in, it was the sponsor who owned the penthouse and roof. Perhaps that was his intent. However, I can't rule that way because the Supreme Court already ruled and the Appellate Division already ruled that you do not own those air rights. (Tr. p. 54:11-20).

44.     In the July 15, 2014 decision, the Court further made the following admissions:

"Strictly speaking, Brady is correct that the question of whether such an easement interferes with his right to build structures on the roof or otherwise permitted by applicable law has never been determined and so is not barred." (July 15, 2014 decision, p.15).

"Brady correctly notes that the issue of whether the sale to Extell violated his rights was never reached, and that the issue of whether the sale of the air rights by 450 Owners Corp. to Sherwood violated Brady's rights could not have been reached in the prior actions." (July 15, 2014 decision, p.19).

45.     Justice Kornreich's admissions prove that none of the criteria for sanctions or frivolous conduct were present in this case. My law suit against Sherwood Equities and the Co-op Board cannot be characterized as "without merit" or unsupportable by a reasonable argument if the Court admits that I am correct that whether the easement interferes with my right to build and the issue has never been reached.  The litigation has only been "delayed" and prolonged because New York State judicial employees and law enforcement agencies, including the Attorney General's Office, refused to follow the intent of the parties, who agreed as to the meaning of the contract, and instead rewrote the contract. What should have taken ten minutes in a hearing has taken eight years.

46.     Similarly, the Court makes no allegations that "material factual statements" made by me were false.  The transcript is replete with instances of the Court and defendants acknowledging that the

contract gives the 12th Floor and Roof Unit the right to have the utilization of any permissible development rights that may from time to time be given to the premises. It was these rights that were transferred by the unlawful transfer of the premise's development rights to Sherwood Equities.

47.     Under the present status quo, Plaintiff is being sanctioned $400,000 for seeking damages from those who unlawfully acquired his rights. This is an extraordinary set of circumstances that warrant this Court's Mandatory Injunction against Defendant.

**b)     Irreparable Harm**

48.     Plaintiff faces a certain threat of irreparable damage and injury if the injunction is not granted. Defendants in the underlying case have already attempted to collect on the unjust sanctions by levying Movant's personal family bank accounts. The threat irreparable, and is is also immediate.

49.     On November 17, 2015, I was served with a Sheriff's Levy by Henrick Feinstein LLP for my commercial apartment at 450 West 31st Street. The sanctions threaten to have my family's only source of income seized from underneath us, effectively bankrupting my wife, three children, and me.

50.     Further, the harm caused by losing my events venue would destroy my reputation, which cannot be quantified in monetary terms. This Court has held that "where there is a threatened imminent loss that will be very difficult to quantify," irreparable harm lies. *Tom Doherty Associates v. Saban Entertainment*, 60 F.3d 27, 38 (2nd Circuit 1995).

51.     Independently, the Co-op Board's attorney, Joseph Augustine, is already attempting to collect on the unjust sanctions and can hold me in default and attempt to seize my Unit. This is extraordinary, as the same attorney is shown *Infra.* at the March 18, 2014 Oral Arguments admitting that the contract gives the 12th Floor and Roof Unit the right to build structures on or above the roof.

**c)     Balance of Equities Favors Plaintiff**

52.     "A court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of*

*Gambell*, 480 U.S. 531, 542 (1987). The causes of action pled against Mr. Schneiderman in the Court of Claims case are certainly in Plaintiff's favor: deprivation of property rights under color of law; uncompensated taking; violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; violations of 42 U.S.C. §1983(1) & (2) and 18 U.S.C. §241; and for common law negligent infliction of emotional distress; gross negligence; and *prima facie* tort.

53.     The balance of the equities in this case clearly favors Movant. The Attorney General of New York will not be harmed by being enjoined to perform his job description, which, in his own words, includes protecting consumers.

> "At some point, we're going to have to make some adjustments to the system. It's up to us, as the top law-enforcement agency in the state, that consumers get what they pay for." Eric Schneiderman[3]

54.     Respondent acknowledges that part of his job is to ensure consumers "get what they pay for." In the present case, Plaintiff paid for a right, as Justice Kornreich stated at Oral Arguments: "The contract is the contract. It wasn't changed when he bought it. *He bought that right*." (Full Citation *Infra*).

55.     Plaintiff is a consumer who purchased one of the central assets of the New York economy, real estate, and the Attorney General has a duty to protect him when judicial employees of the State take it upon themselves to void the rights expressly given to his asset in the offering plan contract. Plaintiff had an unambiguous real estate contract rewritten by the courts of New York State, and was sanctioned by the Supreme Court, Commercial Division, for attempting to exercise his rights in contravention of established New York law.

**d)      Public Interest Favors Granting the Injunction**

56.     Consumers in New York City are paying up to $100 million for apartments because real

---

3     http://nypost.com/2015/11/02/schneidermans-fantasy-sports-probe-focused-on-nonpublic-information/

estate is considered a safe investment.  When the courts are rewriting contracts, voiding the rights entered into by the parties, and issuing sanctions against those bringing suit to preserve those rights, the implications are much broader than only one litigant.  The District Court is urged to act on behalf of existing and future real estate owners of New York.

57.     As shown *Supra,* Justice Kornreich's rewriting of the contract was only the last in a long list that started in 2008, after Justice Friedman initially ruled the contract unambiguous.  As Justice Kornreich herself admitted at the Oral Arguments, in New York State development rights are required to "construct or extend structures upon the roof or above the same," and changes in "applicable law" mean zoning law.  This Court is urged to act now in order to protect existing and future real estate owners of the State of New York.

II.     **The Argument that I Lost the Prior Litigation Unraveled When Defense Attorney After Attorney Admitted that the Language in the February 11, 2010 Appellate Division, and**
the     **Offering Plan, Reserved for My Unit the Exclusive Utilization of the Premise's Development Rights**

Joseph Augustine, attorney for the Co-op Board

THE COURT: -- which means you're going to have to commit the coop board to tell me: What does Paragraph 7 mean?

MR. AUGUSTINE: It means he has the right to build structures once he submits a plan. And if those structures are permissible by law, such as Department of Buildings, and those plans do not pose a structural risk or any other risk to the building in order to -- for him to service the space that he has there, then the board would be inclined to approve it.
...

THE COURT: But what I'm saying is he does have that right, though, under paragraph 7.

MR. AUGUSTINE: He has - - our understanding he has a right to build structures. That's what it says. No one disagrees. The courts all said the same thing, he has a right to build structures.

THE COURT: Well, the courts didn't say that. The courts said that he has no air rights, but he has the right. But I think, perhaps, the courts didn't understand that air rights, FAR, all of that is probably the same thing, development rights, so - -

...

MR. AUGUSTINE:  He has – our understanding he has the right to build structures.  That's what it says.  No one disagrees.  The courts all said the same thing, he has a right to build structures.

THE COURT: Well, the courts didn't say that.  The courts said he has no air rights, but he has the right.  But, I think, perhaps, the courts didn't understand that air rights, FAR, all of that is probably the same thing, development rights, so –

MR. AUGUSTINE:  Well, there are air rights that are reserved.  They weren't all transferred.  The building has at least –

THE COURT:  So it would be your position that he does own some air rights.

Mr. AUGUSTINE:  No. It wouldn't be that he owns them, but the question is that if he submits a plan and its seems reasonable -

THE COURT:  What does he – What does paragraph 7 mean if he doesn't own  any air rights?

MR. AUGUSTINE:  It means he has the right to build a structure, that if it's approved by the governmental agencies and the board sees that it doesn't pose any harm or risk, or inordinate cost to the coop as a whole, because the coop is a corporation, he's just a shareholder.

THE COURT:  What does that mean?

MR. AUGUSTINE:  It means –

THE COURT:  I don't understand what you are saying.

MR. AUGUSTINE:  Right –

THE COURT:  - which means you're going have to commit the coop board to tell me:  What does Paragraph 7 mean?
...

MR. AUGUSTINE:  He has the same – anyone who buys a building, Your Honor, you have the right to build what the law permits.  So if that means –

THE COURT:  No.  He has – he specifically bought a right under Paragraph 7.  And I'm asking you what that right is.

MR. AUGUSTINE:  Well, at the time that was written, the original owner, I believe, was his predecessor –

THE COURT:  It doesn't matter.  The contract is the contract.  It wasn't changed when he bought it.  He bought that right.  What does that right mean?

MR. AUGUSTINE:  It's precisely as I said, Your Honor.  Once –

THE COURT:  I don't know what you said.  Nor do I know what the Courts said.
...

THE COURT:  The decisions don't – don't address this, because at least in this Court's   mind, I don't see how you can build and build up without going into air rights or – you   know, so I don't understand the decisions.  I'm asking you for guidance.

Richard Zuckerman, attorney for Chicago Title Insurance Co.

MR. ZUCKERMAN: Well, let me emphasize, Your Honor, this is not a Chicago Title interest issue, has no bearing on Chicago Title, but the ruling of the Court, both the lower court and the Appellate Division, was that Mr. Brady has no right to any FAR. He has no right to any FAR that existed beforehand, he has no right to any increased FAR. That's what the Court held.

THE COURT: Yes. But it also quoted that and said he has these rights. What does that mean?

MR. ZUCKERMAN: My understanding of those rights, Your Honor -- again, not a Chicago Title issue, and maybe I shouldn't have volunteered on this -- but my understanding of that, Your Honor, is that he has the same rights that are -- an owner of a fully built -- a building build to the full FAR would have.

THE COURT: But that's not what Paragraph 7 says.

MR. ZUCKERMAN: Then I can't add more light on that.

THE COURT: It doesn't say that.

MR. ZUCKERMAN: I can't -- can't shed light on that, Your Honor.

THE COURT: Okay. That's it.
(37:6 – 38:2)

Daniel Millstein, attorney for Frank McCourt

MR. MILSTEIN:  Now, again, if you want my unsolicited opinion or maybe solicited opinion, but in which my client doesn't have an interest as to where the limits are on this, it's clear what the plaintiff is saying is not that "I can build a structure, 20 feet, 15 feet. There's something I can build that was, although I won't tell you what it is that I want to build, my rights were impinged." What he says is, "I have the right, either to control through veto authority or ownership," the Court rejected both of those, " over --

THE COURT: The sale of air rights.

MR. MILSTEIN: "--overbuilding multiple stories above my roof, adding on, "that he basically

has the right to add many stories above his roof to use all of that FAR.

THE COURT:  And that was rejected by both -- by the courts.

MR. MILSTEIN: Right.

THE COURT: I understand.

MR. MILSTEIN: And that's because his roof wouldn't be a roof anymore, it would be in the middle of the building.

MR. MILSTEIN: And I think that's fairly good guidance as to what the term meant when it said "you have the right to use the roof." And, in addition to that --

THE COURT: It doesn't say that. It doesn't say "You have the right."

MR. MILSTEIN: It says --

THE COURT: In says, " In addition to the utilization of the roof."

MR. MILSTEIN: Right. And that's the context. The context is --

THE COURT: It says in addition to the utilization of the roof he has the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law.

MR. MILSTEIN: Right, Your Honor. I think that the -- you interpret contracts in accordance with their context in the circumstances. The circumstances were that there was no more FAR at the time, so you weren't talking about building FAR, building floors.

THE COURT: But there was. When he bought it, the zoning had been changed.

MR. MILSTEIN: The contract was way before he bought it. That language was in place for years before he bought it.

THE COURT: But the language says, "From time to time be permitted under applicable law."

MR. MILSTEIN: Right. Well zoning --

THE COURT: And he bought with the contract.

MR. MILSTEIN: I understand.

THE COURT: And, at the time he bought, the applicable law allowed building on the roof.

Now, whether building on the roof meant all of the air rights, which clearly the Court says it didn't, but what does it mean?

MR. MILSTEIN: Well, again, I don't think it's necessary to resolve any of these motions, but I think the context is a clue. It says, "In addition to the utilization of the roof, you'll have the right to build and extend structures on it or above it." I think the structures that are built on or above have to be in context and supporting the use of the roof. If you're changing it and it's not going to be a roof anymore because you're building floors above it, I would say that that's not consistent. I think there's probably a lot of guidance as to what --

THE COURT: I agree with you. I think your interpretation makes sense, but how would you possibly build structures on the roof, even if it meant just one story or extending the structure, if there is a structure already there, without the use of air rights?

MR. MILSTEIN: Well, I think what counsel just told you, and I'm not an expert in that area of law at all, but he said --

THE COURT: Oh, so then what you're saying doesn't make -- it doesn't matter.

MR. MILSTEIN: Well, what I'm saying is that I thought his explanation was convincing, which is if you have zero extra FAR.

THE COURT: But you do have extra FAR when he bought and pursuant to the contract.

Since you're not an expert, I don't need to hear it.

MR. MILSTEIN: Okay.

THE COURT: Okay, I was just hoping that someone was. Okay, next. Who else? Is there anybody else? I guess not.  (42:25 – 46:13).

58.     Notwithstanding these admission and the recognition of the contradictory opinions,

Justice Kornreich did a complete reversal in the July 15, 2014 decision and instead stated that

Plaintiff's claims were frivolous and meritless, and imposed $400,000 of sanctions:

> "It is clear from the papers and the transaction's history that Brady acted in bad faith in bringing the instant cases."

> "His misinterpretation of prior judgment, his feigned ignorance or the origin or the meaning of the phrase "transferable development rights," and his argument that a decision, which he appealed to no avail, is not binding are but a few examples of the frivolous arguments made in the instant actions."

> "In short, Brady has dragged more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance."

"The trial court and the appellate court courts in the Prior Action have denied him such control. Undeterred, he has ignored these courts' rulings and brought these meritless actions, abusing the judicial process."

"This is a near perfect example of frivolous conduct that warrants defendants request for the imposition of sanctions."

59.   Justice Kornreich did this in part because she knew the Appellate Division, the Commission on Judicial Conduct, the Court of Appeals, and Defendant Eric Schneiderman would go along with the corrupt rewriting of the contract and the February 11, 2010 decision, and with the imposition of unjust, unwarranted sanctions.

## III.   The New York State Attorney General's Office Engaged in a Pattern of Deliberate Indifference and Evasiveness to Evidence of Judicial Criminal Fraudulence and Violation of My Constitutional Rights

60.   New York Attorney General Eric T. Schneiderman ran his re-election campaign on the promise that the laws of New York applied to all citizens equally, not just the very rich; the "People's Lawyer" he said, and he has since made much of the need to apply and follow One Rule – one rule for both the rich and powerful and the common man.  Yet when presented with a clear example judicial corruption, the New York Attorney General engaged in evasive silence and completely disregarded the substance and words of my correspondence.

### On June 13, 2011, the New York State Attorney General, Eric Schneiderman, replied to evidence of corruption and criminal conduct of named state judges by regretting "we cannot be of more assistance to you at this time."

The Office of the Attorney General of the State of New York has received the above-reference complaint which has been forwarded to the Real Estate finance Bureau of this Office.  The Department of law has jurisdiction only over the initial offering of real estate securities, such as cooperatives, condominiums, homeowner associations and time-sharing interests, and matters which may relate directly to such offerings.

The dispute stated within your complaint is currently in litigation.  *The Attorney General's Office does not review matters once they have been presented to a court.*  The judicial process maintains independent review procedures, including but not limited to the appeal process.

We regret that we cannot be of more assistance to you at this time.

20

**At the Start of the Litigation with Sherwood and the Co-op, I Again Sent Notice to the Attorney General that going forward, they must keep an eye on the existing cases in the likely event that another unlawful act be committed**

61.    My January 13, 2014 letter revealed that "a very serious matter involving case fixing of multiple Appellate Division Justices" had occurred, and that his office must investigate the matter and not dismiss such blatant corruption done with deliberate criminal intent, as well as a violation of my constitutional rights.

**The New York Attorney General's "Public Integrity Bureau" replied with an unsigned letter on February 24, 2014**

On behalf of Attorney General Eric C. Schneiderman, I thank you for the information you provided to our office.

The Public Integrity Bureau has carefully reviewed your correspondence and has determined that your complaint does not warrant action by this office at this time.

62.    Thus, informed of past criminal conduct on the part of the state judiciary, and being warned of the potential for further misconduct, the New York State Attorney General's Public Integrity Bureau failed to act and covered over the crimes of the state's judges.

63.    I again wrote to the Attorney General on February 6, 2015, which included the same letter I sent to the Commission on Judicial Conduct, asking them to protect me from the corruption and wrongdoing of the New York State judicial employees who unlawfully rewrote my contract and unjustly sanctioned me.

64.    The Attorney General's Office replied to my February 6, 2015 correspondence by declining to bring an enforcement action.  Unlike the Commission, however, the Attorney General's Office did not claim they saw no wrongdoing, only that they could do nothing about it:

We appreciate your alerting this Office to the situation you describe and have added the information you provided to our files.  It is through complaints such as yours that we learn of

21

patterns of fraud and illegality in the sale of cooperatives, condominiums, homeowners association memberships and timeshares. <u>Unfortunately, we can only bring enforcement actions for a small number of the numerous complaints we receive each year.</u> If, upon additional review, we determine to pursue a further inquiry into your complaint, we will contact you.

Please note that our decision not to pursue this matter further does not reflect a legal determination concerning the merits of your complaint, not does it preclude you from seeking to enforce any private rights that may be available to you. This Office does not represent complaints in court, nor can it provide individual legal advice.

65.     The Attorney General treated my case as an appeal from a disgruntled litigant rather than a case of judicial corruption. The Attorney General would not ask the simple one-sentence question that unravels the duplicity and deliberate criminal intent of the judges who rewrote the description of my Unit for the benefit of a powerful New York real estate developer.

66.     Defendant's acts and omission, committed under color of law, were the but-for cause of the deprivation of my Constitutional rights. Defendant were instrumental in the conspiracy. By failing to perform their duty, they are accomplices in the judicial misconduct and criminality that has resulted in the damages presented herein. Defendant could not have treated me with more disdain.

## CONCLUSION

67.     This motion proves that without a Mandatory Injunction, the Attorney General will continue to completely disregard his duty to give me equal protection under the law. My last letter to the Attorney General, dated October 28, 2015, proves he was made well aware of the immediate danger I am in as the attorneys for the defendants that were unjustly and unlawfully granted sanctions seek enforcement. Though it is clear the sanctions were unjust, unwarranted, and meant to destroy me, Mr. Schneiderman did not even reply to the letter.

68.     Without a Mandatory Injunction the collusion will continue and I will suffer irreversible

harm where the co-op corporation will be able to seize my unit to pay them for the unjust sanctions that were imposed on me for doing nothing more then exercising my constitutional right to sue the individuals that seized and sold the development rights that the parties to the contract agreed were appurtenant to my 12th Floor and Roof Unit

69.     Without a Mandatory Injunction, I will face irreversible harm and the complete destruction of my families livelihood because the "12th Floor and Roof Unit" utilized as an event space called Studio 450.  Operating this business is what my wife, daughter and I do for a living. We have no other source of income. Under the terms of our proprietary lease the Co-op can seize our unit by claiming we are in default of our lease for being unable to repay them the unjust sanctions. This move by the co-op attorneys is imminent.

70.     The Co-op's litigation attorney Joseph Augustine just made an inquiry as to when the sanction will be paid.  The transcript from March 18, 2014 shows Mr. Augustine admitting repeatedly that it was undisputed and that all of the Judges agreed that pursuant to the previous decisions I was given the right to have the use of the premises development rights.

71.     It is certainly extraordinary unjust circumstances that I now face the certain fate of losing my unit to the corrupt co-op if this court does not issue a Mandatory Injunction ordering the Attorney General to protect me when it was proven that the State's judicial employees were discarding their duty, rewriting the contract description of my Unit to void its rights, and deliberately turning a blind to the blatantly corrupt, unlawful, unjust and unconstitutional issuance of $400,000.00 in sanctions.

72.     Although the Attorney General was given overwhelming proof that the stated reasons for sanctions was proven to be deliberately deceptive they have done nothing to protect me or my family from this crime and travesty of justice. Indeed for years turning a blind eye to judicial corruption has been their role in the collusion to help powerful powerful NYC developers get away with seizing

development rights that they all certainly understood were appurtenant to my commercial apartment

73.   It is extraordinary that since November 2007, I have had to fight over one dozen times over the meaning and intent of a one sentence paragraph which can only be construed as giving my Unit the right to have the utilizaion of the premise's permissible development rights which were given to the premise by way of the 2005 rezoning of the area with the creation of Hudson Yard District.  I have already suffered greatly over this unnecessary battle, which should have been over in 10 minutes back in November 2007.  Judges alone created the controversy over the Sponsor's intent where no controversy existed before.

74.   Back in November 2007, I was a much younger, much wealthier, much happier and healthy man.  All of that has changed due to the unbearable stress I have been subjected to for years.  This continued and escalating battle was something inflicted on me by people entrusted to protect people's property and constitutional rights – the State of New York's judicial employees.

75.   This Court must look at the Amended Footnotes to the Schedule of Units (Exhibit G).  NO OTHER JUSTICES WERE WILLING TO LOOK AT THE WHOLE COMMUNICATION and admit its clear and obvious intent.  The whole communication pertains to the square foot partitioning of the building.  In the Offering Plan, the Sponosr measured the lot and building down to the square foot.  He revealed he was keeping the 12th Floor Floor Unit for himself, and that any permissible development rights above the 104,000 s/f used by the existing structure were to be converted to and reserved for the 12th Floor and Roof Unit.

76.   For all of the above extraordinary reasons the court is asked to protect plaintiff and his family from the eminent danger and issue grant the mandatory injunction requiring the Attorney General to obey the constitution and his duty to defend plaintiff from the unjust sanctions. Their is no other way that the AG will fulfill his duty to defend plaintiff and their is no other way to prevent to prevent immediate and irreversible harm to plaintiff.

77.     This Complaint and Affidavit are being filed *pro se* for the simple reason that I have run out of money attempting to vindicate my rights in the courts of New York State – and Defendant, rather than protect me against such an injustice, has assumed the role of an adversary.

78.     All of the elements for this Mandatory Injunction have been reached.  Plaintiff is only suing for equitable relief and the protection of his rights; and any other relief the Court may deem just and proper.

James Brady
Studio 450, 12th Floor
450 West 31st Street
New York, NY 10001
bradyny@gmail.com
201-923-5511

Sworn before me on this

19th ___ day of November 2015

LORI DE LEON
Notary Public, State of New York
No. 01DE5045653
Qualified in Queens County
Commission Expires_6/26/2019

25